UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2014 FEB 28  AM 9: 12

CLERK

BY_____PC_____
DEPUTY CLERK

GMAC MORTGAGE, LLC,               )
                                  )
     Appellant,                   )
                                  )
     v.                           )        Case Nos. 5:13-cv-82;
                                  )        5:13-cv-83
DAVID ORCUTT, HOLLIE STEVENS, and )
JAN M. SENSENICH,                 )
                                  )
     Appellees.                   )

**OPINION AND ORDER AFFIRMING IN PART AND REVERSING IN PART
BANKRUPTCY COURT'S APRIL 2, 2013 ADVERSARY PROCEEDING ORDER
AND BANKRUPTCY COURT'S APRIL 2, 2013 PLAN AND HOMESTEAD
EXEMPTION ORDER**
(No. 13-82, Doc. 1; No. 13-83, Doc. 1)

This matter comes before the court on the appeals filed by GMAC Mortgage, LLC

("GMAC") from two Orders of the United States Bankruptcy Court for the District of

Vermont.  GMAC appeals the Bankruptcy Court's April 2, 2013 Plan and Homestead

Exemption Order overruling GMAC's objections to, and confirming, the Chapter 13 Plan

submitted by Debtors David Orcutt and Hollie Stevens ("Debtors"), which treated

GMAC as an unsecured creditor.[1]  GMAC also appeals the Bankruptcy Court's April 2,

2013 Adversary Proceeding Order granting Debtors' motion for summary judgment,

denying GMAC's cross-motion for summary judgment, and ruling that the mortgage Ms.

---

[1] GMAC also appealed the Bankruptcy Court's confirmation of Debtors' Plan. On July 22,
2013, this court issued an Opinion and Order granting Debtors' motion to dismiss this portion of
the appeal because the Bankruptcy Court "explicitly made confirmation of" Debtors' Chapter 13
Plan "subject to the appeal of" the Adversary Proceeding and so "the Plan is contingent upon
GMAC's [2007 Mortgage] being adjudicated invalid in [that] proceeding." *GMAC Mortg., LLC
v. Orcutt*, 2013 WL 3830496, at *5 (D. Vt. July 22, 2013). The Bankruptcy Court's April 2,
2013 Plan and Homestead Exemption Order was therefore "not a final order with regard to
overruling GMAC's objection to confirmation of the Plan" and "was not appealable without
leave from the district court, which GMAC has not sought." *Id.* (internal citations omitted).

Stevens executed and delivered to GMAC in 2007 (the "2007 Mortgage") is inoperative under Vermont law.

In both appeals, GMAC challenges whether Debtors can properly claim a homestead exemption for their Tunbridge, Vermont property on which GMAC holds the 2007 Mortgage and whether the Bankruptcy Court has the statutory and constitutional authority to enter a final judgment declaring the 2007 Mortgage inoperative as a matter of state law. If the Bankruptcy Court had the statutory and constitutional authority to determine the validity of the 2007 Mortgage, then GMAC contends the Bankruptcy Court must consider the state law doctrine of equitable subrogation, which GMAC maintains would require the Bankruptcy Court to treat it as a secured creditor.

Debtors oppose GMAC's appeal and maintain that their claim of a homestead exemption within their Chapter 13 Plan is proper, that the 2007 Mortgage is void *ab initio* under Vermont law because Mr. Orcutt did not sign it, and that in the course of confirming their Plan and determining GMAC's objections thereto, the Bankruptcy Court had the statutory and constitutional authority to enter a final judgment finding the 2007 Mortgage inoperative under state law. Debtors further argue that Vermont statutory law controls the validity of the 2007 Mortgage and allows no consideration of the competing equities, including consideration of the doctrine of equitable subrogation.

Trustee Jan M. Sensenich (the "Trustee") contends that GMAC never obtained a valid lien on Debtors' property through the 2007 Mortgage and therefore the Bankruptcy Court properly adjudicated the issues of Debtors' homestead exemption and GMAC's secured creditor status based on that assumption. The Trustee further contends that the Bankruptcy Court's decisions were well within its jurisdiction and that GMAC cannot avail itself of any equitable remedies under state law.

The court heard oral argument on GMAC's appeals on October 7, 2013. Debtors are represented by Michelle M. Kainen, Esq. GMAC is represented by James B. Anderson, Esq. The Trustee is involved in the Main Proceeding, but is not a party in the Adversary Proceeding.

## I.   Factual Background.

The facts in the pending appeals are undisputed.  Debtors are husband and wife who were married on February 14, 1997.  By warranty deed dated July 20, 1999, they purchased real property located at 120 Clarksville Road in Tunbridge, Vermont (the "Tunbridge Property"), as tenants by the entirety.  At all relevant times, the Tunbridge Property was Debtors' homestead.  At the time of their initial purchase of the Tunbridge Property, Debtors executed a note (the "1999 Note") for $39,000 and corresponding mortgage (the "1999 Mortgage") in favor of Katrina B. Clark.

On October 10, 2001, Debtors executed and delivered a note and mortgage on the Tunbridge Property in favor of Beneficial Finance of New Hampshire (the "2001 Mortgage"), in the amount of $15,000.  Debtors refinanced the 1999 and 2001 debts in 2004 with GMAC through a note (the "1st 2004 Note") and a mortgage on the Tunbridge Property (the "1st 2004 Mortgage").  As a result of the 2004 refinancing, GMAC discharged the 1999 Mortgage and 2001 Mortgage.  Also in 2004, Debtors borrowed an additional $15,000 from GMAC.  This amount was documented in a separate note (the "2nd 2004 Note") and was secured by a new mortgage in favor of GMAC on the Tunbridge Property (the "2nd 2004 Mortgage").

In 2007, Debtor Stevens refinanced again with GMAC.  At the closing, she executed and delivered to GMAC a note in the amount of $105,000 (the "2007 Note") which was secured by the 2007 Mortgage, which Ms. Stevens also executed and delivered to GMAC.  Ms. Stevens used the proceeds from the 2007 Note to pay credit card debts in the amount of $22,773.00, received $11,206.29 in cash, paid closing costs, and obtained a discharge of the first and second 2004 Notes and the first and second 2004 Mortgages for both herself and her husband.  Mr. Orcutt did not sign either the 2007 Note or the 2007 Mortgage, although he was present at the closing.

## II.   Procedural Background.

### A.   The Proceedings Prior to Remand.

In June 2011, Debtors filed a voluntary Chapter 13 petition for bankruptcy protection (the "Petition"), as well as a proposed Plan.  Schedule A to the Petition listed

3

the Tunbridge Property as jointly held by Debtors as tenants by the entirety with a current value of $110,600.  In Schedule C, Debtors claimed an exemption pursuant to 27 V.S.A. § 101 in the amount of $103,104 for the Tunbridge Property.  Debtors' Schedule D listed three statutory tax liens totaling $7,496, as well as a secured claim held by a Vermont bank totaling $5,448.  In Schedule F of the Petition, Debtors listed GMAC as a creditor holding an unsecured, nonpriority claim for $102,951 and noted: "Money loan[e]d for invalid mortgage on primary residence[.]"  (Bankr. Case No. 11-10553, Doc. 1 at 25.) Debtors' unsecured, nonpriority claims totaled $199,851.  The proposed Plan did not provide for payment of the 2007 Note and Mortgage.

GMAC filed: (1) an objection to confirmation of the Plan, alleging that it made no provision for paying the 2007 Note and Mortgage and thus did not comply with 11 U.S.C. § 1325(a)(3); and (2) an objection to Debtors' claim of a homestead exemption under 11 U.S.C. § 522(b)(1) and 27 V.S.A. § 101, arguing that the Tunbridge Property was subject to the 2007 Mortgage.  GMAC also filed a proof of claim for a secured claim in the amount of $107,747.

In conjunction with the filing of the Petition, Debtors filed an adversary proceeding (the "Adversary Proceeding"), characterizing it as "an action to determine the nature, extent and validity of the mortgage on [D]ebtors' residence, pursuant to 27 V.S.A. § 141, 27 V.S.A. § 349, 11 U.S.C. § 522 and Federal Rule of Bankruptcy Procedure 7001."  (Bankr. Case No. 11-01013, Doc. 4 at 1.)  In Count One, Debtors asked the Bankruptcy Court to issue a declaratory judgment that the 2007 Mortgage was "void" because Mr. Orcutt did not sign the 2007 Mortgage or join in the conveyance, and under Vermont law, "[i]n order to convey an interest in a homestead, both spouses must join in the execution of the conveyance."  *Id.* at 3.

Thereafter, Debtors and GMAC cross-moved for summary judgment in the Adversary Proceeding.  The Bankruptcy Court granted Debtors' motion for summary judgment on Count One of Debtors' Amended Complaint on the grounds that "the 2007 Mortgage securing [the 2007 Note] with a lien against [Debtors'] homestead property was inoperative because Mr. Orcutt did not execute it and it purported to encumber

4

entirety property which he owned with his wife." *In re Orcutt*, 2012 WL 627675, at *1, *4-6 (Bankr. D. Vt. Feb. 24, 2012) (further noting "the 2007 Mortgage is inoperative under the clear mandates of 27 V.S.A. § 141"). The Bankruptcy Court denied GMAC's cross-motion for summary judgment on both counts of the Amended Complaint, *id.* at *1, as well as GMAC's later motion for reconsideration. *See In re Orcutt*, 2012 WL 909323, at *2 (Bankr. D. Vt. Mar. 12, 2012).

In initially ruling on the validity of the 2007 Mortgage, the Bankruptcy Court rendered a declaratory judgment under Vermont law. It did not cite any provision of the Bankruptcy Code which authorized the declaratory judgment and did not address the implications of *Stern v. Marshall*, 131 S. Ct. 2594 (2011), in its decision. GMAC filed a timely appeal.

On December 13, 2012, this court vacated the Bankruptcy Court's February 24, 2012 Order in the Adversary Proceeding and remanded the matter so that the Bankruptcy Court could address whether it had subject matter jurisdiction to issue a declaratory judgment under state law in light of *Stern v. Marshall*. *See GMAC Mortg., LLC v. Orcutt*, 2012 WL 6552914, at *13 (D. Vt. Dec. 13, 2012). The court concluded that "the Bankruptcy Court lacked the constitutional authority to adjudicate Debtors' [A]dversary [P]roceeding solely as a matter of state law," but observed that the Bankruptcy Court may possess the statutory and constitutional authority to determine the validity of the 2007 Mortgage as part of its claims allowance process, or as an integral part of another proceeding under the Bankruptcy Code. *Id.* at *6, *11. It noted that "by adjudicating the claim as purely a question of state law, the Bankruptcy Court did not consider the competing equities" or whether "Debtors will receive a windfall and unjust enrichment at the expense of GMAC and their unsecured creditors if the Bankruptcy Court does not exercise its equitable powers." *Id.* at *11-12. The court therefore remanded the proceeding so that the Bankruptcy Court could "clarify the statutory and constitutional basis under which it is proceeding and adjudicate the issues raised by the parties consistent with that statutory and constitutional authority." *Id.* at 12.

### B.    The Bankruptcy Court's Decision on Remand.

After remand, proceedings resumed in the Bankruptcy Court with all parties and the Bankruptcy Court essentially adopting the same positions they had taken prior to remand. In the Adversary Proceeding, the Bankruptcy Court issued an Order that "clarifie[d]" that the outcome of Debtors' Adversary Proceeding was "integral to resolution of other pending matters in the bankruptcy case"; and determined "that, pursuant to controlling law, [GMAC's] mortgage is inoperative" and "that this determination dispose[d] of all open legal issues pending in this case." *In re Orcutt*, 2013 WL 1342741, at *1 (Bankr. D. Vt. Apr. 2, 2013) (the "April 2, 2013 Adversary Proceeding Order"). The Bankruptcy Court concluded that it had the statutory and constitutional authority to adjudicate the validity of the 2007 Mortgage:

> In order to clarify this Court's previous ruling and more clearly tether the determination of the validity of the [2007 Mortgage] to provisions of the Bankruptcy Code, the Court points to the necessary connection between the declaration that the [2007 Mortgage] is inoperative under state law and the determination of the bankruptcy issues pending in [Debtors'] Chapter 13 case. Under *Stern* and its progeny—and consistent with the District Court's remand order—the relationship between this Court's determination of the [2007 Mortgage] validity and the pending rulings on [GMAC's] objection to [Plan] confirmation under § 1325, allowance of [GMAC's] claim under § 506(a), and the propriety of [Debtors'] homestead exemption under § 522(b)(1) and 27 V.S.A. § 101 confer constitutional and statutory authority upon this Court to enter a final judgment in this [A]dversary [P]roceeding.

*Id.* at *7. The Bankruptcy Court declined to address GMAC's arguments regarding the competing equities and the extent to which the Bankruptcy Court should exercise its equitable powers to hold the 2007 Mortgage valid, reasoning:

> [GMAC] has not annunciated how an order declaring the [2007 Mortgage] to be valid is necessary or appropriate *to carry out a provision of the Bankruptcy Code*. Rather, it argues that this is the right thing to do because such a declaration would generate additional funds for [GMAC] and a greater divided for unsecured creditors, and to declare the [2007 Mortgage] inoperative will result in a windfall to, and unjust enrichment of, [Debtors]. However, whenever one party loses, it can argue that the prevailing party is being unjustly enriched. That argument is not persuasive. Moreover, to

6

> breathe validity into a mortgage that is clearly invalid under state law
> would be contrary to the longstanding jurisprudence requiring that
> bankruptcy courts apply state law to value mortgages, and would deprive
> [Debtors] of their fresh start. In the absence of a clear explanation of how
> declaring the [2007 Mortgage] valid is necessary to carry out a specific
> section or type of relief authorized under the Bankruptcy Code, this Court
> must heed the warning not to use [11 U.S.C.] § 105(a) as a roving
> commission to do equity.

*Id.* at *6 (internal citations and quotation marks omitted). The Bankruptcy Court further

concluded that, because "the language of 27 V.S.A. § 141 categorically renders" the 2007

Mortgage "inoperative," Debtors' treatment of the 2007 Mortgage as an unsecured claim

under § 506(a) was proper. *Id.* The Bankruptcy Court thus declined to "enter an order

reaching contrary conclusions, under § 105(a), based upon a general sense of fairness.

To do so would be to give [GMAC] a substantive right not available under applicable

law." *Id.*

 In accordance with these rulings, in the Adversary Proceeding, the Bankruptcy

Court granted Debtors' motion for summary judgment and denied GMAC's cross-motion

for summary judgment, holding that the 2007 Mortgage was "inoperative under state

law." *Id.* at *7. In addition, the Bankruptcy Court held that "in light of the essential

nexus between the state law and bankruptcy law issues, the Court will issue an order

ruling upon the open bankruptcy issues based upon—and part and parcel of—the

determination of the mortgage's validity." *Id.* That same day, the Bankruptcy Court

issued an Order in the Main Proceeding, resolving the then pending issues[2] regarding

confirmation of the Plan and Debtors' homestead exemption claim as follows:

> For the reasons set forth in the memorandum of decision and order
> of even date granting [Debtors'] motion for summary judgment and
> denying [GMAC's] cross-motion for summary judgment on remand, and
> the finding that the [2007 Mortgage] is inoperable,

---

[2] The Bankruptcy Court had previously entered an Order on June 11, 2012 that confirmed the
Plan and treated GMAC as an unsecured creditor but conditioned confirmation as "subject to"
the outcome of the Adversary Proceeding. (Bankr. Case No. 11-10553, Doc. 49 at 5) (the "June
11, 2012 Plan Confirmation Order").

IT IS HEREBY ORDERED that [Debtors'] treatment of the [2007 Mortgage] as an unsecured claim in their Plan is proper under 11 U.S.C. § 506(a), and [GMAC's] objection to confirmation of [Debtors' Plan] under 11 U.S.C. § 1325(a)(3) is OVERRULED.

IT IS FURTHER ORDERED that [GMAC's] objection to [Debtors'] claim of homestead exemption under 11 U.S.C. § 522(b)(1) and 27 V.S.A. § 101 is OVERRULED.

(Bankr. Case No. 11-10553, Doc. 64 at 1) (the "April 2, 2013 Plan and Homestead Exemption Order").

## III.   Conclusions of Law and Analysis.

### A.   Standard of Review.

The court has jurisdiction over the appeals pursuant to 28 U.S.C. § 158(a)(1). Federal Rule of Bankruptcy Procedure 8013 provides that a district court functions as an appellate court and may affirm, modify, reverse, or remand an order of the Bankruptcy Court with instructions for further proceedings. *See* Fed. R. Bankr. P. 8013.

Findings of fact "shall not be set aside unless clearly erroneous." *Id.*; *see also In re Lehman Bros. Inc.*, 478 B.R. 570, 582 (S.D.N.Y. 2012) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous.") (citing *In re Kalikow*, 602 F.3d 82, 91 (2d Cir. 2010)). A bankruptcy court's conclusions of law, including those granting or denying summary judgment, are reviewed *de novo*. *In re Maxwell Newspapers, Inc.*, 981 F.2d 85, 89 (2d Cir. 1992); *Schackner v. Breslin Realty Dev. Corp.*, 2012 WL 32624, at *3 (E.D.N.Y. Jan. 5, 2012).

### B.   Avoidance of the 2007 Mortgage Lien.

GMAC argues that Debtors improperly avoided the 2007 Mortgage that impaired their homestead exemption claim in violation of 11 U.S.C. § 522(f)-(h) because the 2007 Mortgage is a voluntary conveyance and § 522(f)-(h) applies only to involuntary conveyances.[3] However, because Debtors did not ultimately seek avoidance of the 2007

---

[3] Pursuant to § 522(c), "property exempted under [§ 522] is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case, *except* . . . a debt secured by a lien that is . . . *not avoided* under subsection (f) or (g) of this section or under [other

Mortgage and because the Bankruptcy Court did not tether its homestead exemption decisions to Debtors' avoidance powers, GMAC's reliance upon Debtors' alleged improper avoidance is misplaced.

In the alternative, GMAC argues that, pursuant to 11 U.S.C. §§ 323, 544, the Trustee could and should have sought avoidance of the 2007 Mortgage and challenged Debtors' homestead exemption consistent with his fiduciary responsibilities to all the creditors, including the unsecured creditors. *See In re Overbaugh*, 559 F.3d 125, 129-30 (2d Cir. 2009) (holding "that the primary purpose of the Chapter 13 trustee is not just to serve the interests of the unsecured creditors, but rather, to serve the interests of all creditors" and "that, in light of the statutory requirement that a trustee properly disburse all claims, *see* 11 U.S.C. § 1302(b)(3), . . . a trustee has standing to object when a debtor attempts to reclassify a secured claim as an unsecured claim") (internal quotation marks and citations omitted). Had the Trustee done so, GMAC contends that it would have at least been able to share in the benefits of those efforts as an unsecured creditor. Instead, in both the initial appeal and the pending appeals, GMAC contends the Trustee has fully supported Debtors' positions that the 2007 Mortgage is void and that Debtors alone should receive the benefits of its alleged invalidity.

Because in the pending appeals GMAC does not specifically allege a breach of the Trustee's fiduciary duties, and because the Bankruptcy Court did not rely on avoidance in rendering its decisions, the court proceeds no further with these issues.

---

specified sections]." 11 U.S.C. § 522(c) (emphasis supplied). Subsection (f) provides that a "debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled . . . if such lien is (A) a judicial lien . . . or (B) a nonpossessory, nonpurchase-money security interest in [the listed goods]." Subsection (g) provides that a "debtor may exempt under [§ 522(b)] property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under [§ 522(b)] if such property had not been transferred, if . . . (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and (B) the debtor did not conceal such property; or (2) the debtor could have avoided such transfer under [§ 522 (f)(1)(B)]." Subsection (h) provides that a "debtor may avoid a transfer of property of the debtor" if the "transfer is avoidable by the trustee" under certain sections and "the trustee does not attempt to avoid such transfer."

9

**C.     The Bankruptcy Court's Statutory and Constitutional Authority to
         Declare the 2007 Mortgage Inoperative.**

In this court's December 13, 2012 Opinion and Order, the court directed the
Bankruptcy Court to "clarify the statutory and constitutional basis under which it is
proceeding and adjudicate the issues raised by the parties consistent with that statutory
and constitutional authority." *GMAC Mortg., LLC v. Orcutt*, 2012 WL 6552914, at *12
(D. Vt. Dec. 13, 2012). On remand, the Bankruptcy Court explained its authority to
adjudicate the validity of the 2007 Mortgage under state law. It did so citing the
Bankruptcy Code provisions that required it to make this determination:

> This Court is adjudicating the validity of the [2007 Mortgage]—a question
> of state law—because it is the necessary first step in, and tantamount to, a
> ruling on: 1) the secured status of [GMAC's] claim in this case under
> § 506(a) of the Bankruptcy Code; 2) treatment of [GMAC's] claim in the
> [Plan] and objection to the [Plan] under § 1325 of the Bankruptcy Code;
> and 3) [GMAC's] objection to [Debtors'] claim of homestead exemption
> under § 522(b) of the Bankruptcy Code.

*In re Orcutt*, 2013 WL 1342741, at *4 (Bankr. D. Vt. Apr. 2, 2013).

GMAC argues that the Bankruptcy Court violated this court's mandate because it
did not actually re-open any bankruptcy court proceedings; it merely identified provisions
of the Bankruptcy Code under which it *could have* proceeded and then once again
adjudicated the validity of the 2007 Mortgage as an issue governed exclusively by state
law. Although at first blush GMAC's characterization of the Bankruptcy Court's
decision on remand has some credence, the Bankruptcy Court's determination that it was
required to determine the validity of the 2007 Mortgage in allowing or disallowing
GMAC's proof of claim,[4] in ruling on GMAC's objection to Debtors' homestead

---

[4] Because GMAC asked to amend the Plan to recognize GMAC as a secured creditor and filed a
proof of claim, the Bankruptcy Court was statutorily authorized under § 506(a) to decide whether
GMAC was a secured creditor by virtue of the 2007 Mortgage. Section 506(a)(1) provides:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the
> estate has an interest . . . is a secured claim to the extent of the value of such
> creditor's interest in the estate's interest in such property, . . . and is an unsecured

exemption,[5] and in confirming Debtors' plan[6] remains correct. Accordingly, this court

must determine whether the manner in which the Bankruptcy Court proceeded on remand

---

> claim to the extent that the value of such creditor's interest . . . is less than the
> amount of such allowed claim. . . .

11 U.S.C. § 506(a). "Section 506(a) provides that a claim secured by a lien on property is
considered secured up to the value of such property and unsecured for the remainder." *In re
Boston Post Road Ltd. P'ship*, 21 F.3d 477, 480 (2d Cir. 1994); *see also AmeriCredit Fin. Servs.,
Inc. v. Tompkins*, 604 F.3d 753, 756 (2d Cir. 2010) ("Section 506(a) specifies, with regard to
claims arising from debts secured by liens on property, that such claims may be divided into
secured and unsecured portions in those circumstances where the collateral is inadequate to
satisfy the debt: the unsecured portion is the amount by which the debt exceeds the current value
of the collateral.") (internal quotation marks and alterations omitted). Because § 506(a) applies
only to a claim secured by a lien on property, the Bankruptcy Court had to determine first
whether GMAC had a valid lien on the Tunbridge Property.

[5] In the process of filing a Chapter 13 petition and plan, 11 U.S.C. § 522(l) "states the procedure
for claiming exemptions and objecting to claimed exemptions," *Taylor v. Freeland & Kronz*, 503
U.S. 638, 642 (1992), by requiring a debtor to "file a list of property that the debtor claims as
exempt under subsection (b) of this section. . . . Unless a party in interest objects, the property
claimed as exempt on such list is exempt." 11 U.S.C. § 522(l); Fed. R. Bankr. P. 4003
(governing exemptions); *see also In re Bell*, 225 F.3d 203, 209 (2d Cir. 2000) ("Any creditor and
the bankruptcy trustee may file objections to the debtor's list of property claimed as exempt. . . .
If no objections are made, then 'the property claimed as exempt . . . is exempt.'") (quoting
§ 522(l)). Under Rule 4003(b), a party must file an objection within a certain time period, or is
otherwise barred from "challenging the validity of the exemption" thereafter. *Taylor*, 503 U.S. at
642. In this case, Debtors timely claimed a homestead exemption under 11 U.S.C.
§ 522(b)(3)(A) and 27 V.S.A. § 101, and GMAC timely filed an objection to this claim on the
basis that Debtors' home was subject to the 2007 Mortgage. Once Debtors claimed the
exemption and GMAC objected, the Bankruptcy Court was statutorily authorized to resolve the
dispute between the parties concerning the application of the homestead exemption, which
necessarily required the Bankruptcy Court to apply Vermont law since state law "governs the
nature and scope" of an exemption. *CFCU Cmty. Credit Union v. Hayward*, 552 F.3d 253, 259
(2d Cir. 2009); *see also KLC, Inc. v. Trayner*, 426 F.3d 172, 174 (2d Cir. 2005) (applying
Connecticut law to homestead exemption).

[6] To confirm a proposed plan, the Bankruptcy Court must ensure that "the plan complies with the
provisions" of title 11, *see* 11 U.S.C. § 1325(a)(1), and if there are secured claims, then
§ 1325(a)(5) "provides [only] three circumstances in which a secured claim poses no obstacle to
plan confirmation: (1) when the secured creditor accepts the plan; (2) when the debtor surrenders
the secured property; or (3) in an option known as a cramdown[.]" *Tompkins*, 604 F.3d at 756.
GMAC objected to confirmation of Debtors' Plan because it contends the Plan wrongfully treats
the 2007 Mortgage as unsecured when it allegedly remains an enforceable lien of record.
Debtors, in turn, claimed the 2007 Mortgage was not an enforceable lien under Vermont law.

comported with *Stern v. Marshall* or whether the Bankruptcy Court's decisions exceed its jurisdiction.

In *Stern*, the Supreme Court held that a bankruptcy court cannot enter a final judgment on state law claims adjudicating the liability as between individuals, unless it is an adjudication of public rights. *See Stern*, 131 S. Ct. at 2609-13 (describing Court's development of doctrine concerning public rights). The Court defined public rights as "deriv[ing] from a federal regulatory scheme, or in which resolution of the claim by an expert government agency is deemed essential to a limited regulatory objective within the agency's authority." *Id.* at 2613. It held that "Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.* at 2618.

GMAC argues that Debtors have improperly relied on 28 U.S.C. § 157(b) as conferring on the Bankruptcy Court authority to enter a final judgment as a matter of state law. GMAC is correct that § 157(b) cannot confer *constitutional* authority to adjudicate state law issues. *See Stern*, 131 S. Ct. at 2608. However, nothing in *Stern* limits the Bankruptcy Court's *statutory* authority under 28 U.S.C. § 157(b) to "hear and determine . . . all core proceedings," including confirmations of plans, determinations of the validity, extent, or priority of liens, and allowance or disallowance of claims against the estate or exemptions from property of the estate, *see* 28 U.S.C. § 157(b)(2)(B), (K), (L), and in any core proceeding, "'the bankruptcy court has comprehensive power and may enter appropriate orders and judgments.'" *Baker v. Simpson*, 613 F.3d 346, 352 (2d Cir. 2010) (quoting *In re Petrie Retail, Inc.*, 304 F.3d 223, 228 (2d Cir. 2002)); *see also In re U.S. Lines, Inc.*, 197 F.3d 631, 634, 636-39 (2d Cir. 1999) (determining that bankruptcy court had statutory authority under § 157(b)(2) to enter a declaratory judgment regarding certain parties' rights under pre-petition insurance contracts).

---

The Bankruptcy Court necessarily had to determine the validity of the 2007 Mortgage before confirming the Plan pursuant to § 1325.

As some courts have noted, the potential reach of *Stern* is "sweeping" given its restrictive definition of public rights. *See In re Frazin*, 732 F.3d 313, 318-19 (5th Cir. 2013); *see also In re Ortiz*, 665 F.3d 906, 911 (7th Cir. 2011) (describing *Stern*'s holding as "quite significant" because it stands for the proposition "that Article III prohibit[s] Congress from giving bankruptcy courts authority to adjudicate claims that went beyond the claims allowance process"). Post-*Stern*, in order to determine the limits of a bankruptcy court's constitutional authority to adjudicate state law issues, the circuit courts have focused on whether the state law issue is necessarily resolved during the bankruptcy proceedings.

Under *Stern*, the Bankruptcy Court's constitutional authority includes the confirmation of Debtors' Plan as that Plan "stems from the bankruptcy itself" and does not exist outside of it. *Stern*, 131 S. Ct. at 2618. Moreover, "[n]on-Article III judges may hear cases . . . when the claim becomes 'integral to the restructuring of the debtor-creditor relationship,'" as was the case here given GMAC's insistence upon secured creditor status under the Plan. *In re Ortiz*, 665 F.3d at 914 (quoting *Stern*, 131 S. Ct. at 2617); *see also Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751, 773 (7th Cir. 2013) (examining whether the state law issue raised in determining whether to grant or deny discharge was "central to the restructuring of the debtor-creditor relationship"). The Bankruptcy Court's decision to decide that issue under state law does not undercut its constitutional authority because "in *Stern* the state-law basis of [the] counterclaim was not the dispositive factor; instead, the [Supreme] Court focused on whether the claim was central to the bankruptcy process." *In re BP RE, L.P.*, 735 F.3d 279, 286 (5th Cir. 2013).

Moreover, post-*Stern*, several courts have concluded that a bankruptcy court possesses statutory and constitutional authority when a particular state law issue necessarily *would have been resolved* in a bankruptcy proceeding. *See, e.g., In re Frazin*, 732 F.3d at 319-20 (applying *Stern* "to determine whether any of the[] counterclaims would necessarily have been resolved in the claims-allowance process"); *Sharif*, 727 F.3d at 775 (addressing a claim asserted by a third party seeking a declaratory judgment that a debtor's trust was the debtor's alter ego, and analyzing whether the alter-ego claim had

"any relation to the claims-allowance process" and whether "the bankruptcy court necessarily would have needed to resolve the alter-ego claim" when ruling on objections to discharge, and concluding no constitutional authority to enter final judgment on alter-ego claim because the claim would not be "resolved in the claims-allowance process"); *In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 564 (9th Cir. 2012), *cert. granted sub nom. Exec. Benefits Ins. Agency v. Arkison*, 133 S. Ct. 2880 (2013) (determining that the "principled basis" for analyzing subject matter jurisdiction post-*Stern* turns on whether the bankruptcy proceeding involves "a claim against a creditor that necessarily had to be resolved in the course of the claims-allowance process"); *Waldman v. Stone*, 698 F.3d 910, 919-21 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 1604 (2013) (examining whether state law claims seeking to discharge a mortgage and judgment lien based on fraud "were part and parcel of the claims-allowance process in bankruptcy" and concluding "bankruptcy court was authorized to enter final judgment as to th[o]se claims" asserted by the debtor against the creditor in an adversary proceeding); *In re Sundale, Ltd.*, 499 F. App'x 887, 892-93 (11th Cir. 2012) ("[T]he Supreme Court held that bankruptcy courts lack the constitutional authority to enter a final judgment on a state law counterclaim *that is not resolved in the process of ruling on a creditor's proof of claim*. . . . [I]t must follow that a bankruptcy court would have jurisdiction to enter final judgment on state law counterclaims that are necessarily resolved in the process of ruling on a creditor's proof of claim.") (internal citation and quotation marks omitted).

The Second Circuit endorsed this approach when, in addressing *Stern*'s implications, it analyzed whether ruling on the creditor's proof of claim against the bankruptcy estate "required" the bankruptcy court "to first resolve" the issue of state law concerning an alleged fraudulent transfer. *In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 95 (2d Cir. 2014). Accordingly, whether in fact on remand the Bankruptcy Court actually engaged in the claims allowance process or reconsidered GMAC's objection to Debtors' homestead exemption in deciding the validity of the 2007 Mortgage is not dispositive.

14

Consistent with *Stern*, the issue of whether the 2007 Mortgage was a valid lien and provided GMAC with secured creditor status *would have been resolved* in the claims allowance process. It was also an integral part of the Bankruptcy Court's ruling on GMAC's objections to Debtors' homestead exemption and determining whether Debtors' Plan properly treated GMAC as unsecured. Under *Stern v. Marshall*, the Bankruptcy Court thus had the statutory and constitutional authority to adjudicate the validity of the 2007 Mortgage as a necessary, integral, and indivisible part of the bankruptcy proceedings. The Bankruptcy Court's determination of its statutory and constitutional authority to adjudicate the validity of the 2007 Mortgage is therefore AFFIRMED.

### D. The Bankruptcy Court's Conclusions of Law Regarding the Validity of the 2007 Mortgage.

Having determined that the Bankruptcy Court had the statutory and constitutional authority to determine the validity of the 2007 Mortgage, the court turns to whether its determination of that issue was correct. The Bankruptcy Court concluded that Vermont statutory law compelled it to find that Debtors had a valid homestead exemption under Vermont law which allowed them to retain the full fair market value of the Tunbridge Property without any obligation to pay the 2007 Mortgage because "27 V.S.A. § 141 classifies the [2007 Mortgage] as inoperative." *In re Orcutt*, 2013 WL 1342741, at *6, *7 (Bankr. D. Vt. Apr. 2, 2013) (declaring further that the 2007 Mortgage "is inoperative under state law"). GMAC contends this decision was erroneous as a matter of law.

"Under 11 U.S.C. § 522(b), debtors may exempt certain property from their bankruptcy estate." *In re Baker*, 604 F.3d 727, 730 (2d Cir. 2010) (citing *Rousey v. Jacoway*, 544 U.S. 320, 322 (2005) (noting that Bankruptcy Code permits debtors "to retain [certain] assets rather than divide them among their creditors")). "The debtor can elect to use either the federal exemption scheme outlined in 11 U.S.C. § 522(d), provided the debtor's home state has not opted out of the federal scheme, or the debtor may use an exemption scheme provided by state law." *In re Parrotte*, 22 F.3d 472, 474 (2d Cir. 1994). Vermont provides Debtors an "exemption scheme." *Id.* While "federal law governs the date on which the exemption comes into play," state "law governs the nature

15

and scope of the exemption." *CFCU Cmty. Credit Union v. Hayward*, 552 F.3d 253, 259 (2d Cir. 2009).

In this case, Debtors claimed an exemption pursuant to § 522(b)(3)(A), which allows debtors to exempt "any property that is exempt under . . . State or local law that is applicable on the date of the filing of the petition." 11 U.S.C. § 522(b)(3)(A). The Vermont homestead exemption provides that the "homestead of a natural person consisting of a dwelling house, outbuildings, and the land used in connection therewith, not exceeding $125,000.00 in value, and owned and used or kept by such person as a homestead together with the rents, issues, profits, and products thereof, shall be exempt from attachment and execution." 27 V.S.A. § 101. It is undisputed that the homestead exemption in this case exceeds the fair market value of the Tunbridge Property.

GMAC challenges the Bankruptcy Court's conclusion that the 2007 Mortgage was "inoperative" under Vermont law and that 27 V.S.A. § 141 permitted no other result. *See In re Orcutt*, 2013 WL 1342741, at *6-7 (Bankr. D. Vt. Apr. 2, 2013). 27 V.S.A. § 141(a) provides:

> A homestead or an interest therein shall not be conveyed by the owner thereof, if married, except by way of mortgage for the purchase money thereof given at the time of such purchase, unless the wife or husband joins in the execution and acknowledgment of such conveyance. A conveyance thereof, or of an interest therein, not so made and acknowledged, shall be inoperative so far only as relates to the homestead provided for in this chapter.

In *Estate of Girard v. Laird*, 621 A.2d 1265 (Vt. 1993), the Vermont Supreme Court expressly overruled a prior case, *Martin v. Harrington*, 50 A. 1074 (Vt. 1901), that had held that "a conveyance of homestead property by only one spouse is void ab initio." *Estate of Girard*, 621 A.2d at 1270. Instead, it ruled that a conveyance of homestead property by only one spouse "is ineffective with respect to the spouse who did not join it and may be set aside by that spouse unless the homestead interest is otherwise extinguished." *Id.*

16

In *Charter One Bank v. Estate of Spillane*, 807 A.2d 452 (Vt. 2002), the Vermont Supreme Court reaffirmed *Estate of Girard* and held that, under 27 V.S.A. § 141(b), "the liens created by the advances are not void, regardless of a lack of consent . . . , because the liens created without [the non-signing spouses'] consent are voidable, and not void ab initio." *Id.* at 453.

Both Debtors and the Trustee erroneously take the position that GMAC never obtained a lien by virtue of the 2007 Mortgage because Debtor Orcutt did not sign it. Debtors assert that the 2007 Mortgage "signed by Hollie Stevens was void *ab initio* by operation of law," (Case No. 13-82, Doc. 15 at 19), whereas, "from the [T]rustee's vantage point, GMAC *never* obtained any lien on [Debtors'] homestead and therefore, there is *no lien* to be avoided." (Case No. 13-82, Doc. 14 at 7.) Debtors' and Trustee's arguments in this respect are clearly untenable under Vermont law because the Vermont Supreme Court specifically rejected them in *Estate of Girard*. The 2007 Mortgage is not void *ab initio* but was instead a voidable lien until Debtor Orcutt asked that it be set aside.

Although the Bankruptcy Court's determination that "27 V.S.A. 141 classifies the [2007 Mortgage] as inoperative," *In re Orcutt*, 2013 WL 1342741, at *6 (Bankr. D. Vt. Apr. 2, 2013), is incorrect as stated, it is clear that the Bankruptcy Court made this determination in the context of Debtor Orcutt's election to set aside the 2007 Mortgage and in the Bankruptcy Court's determination that the 2007 Mortgage would not apply to Debtors' homestead. *See* 27 V.S.A. § 141(a) (providing that a conveyance of a homestead or an interest therein by only one spouse "shall be inoperative so far only as relates to the homestead"). The Bankruptcy Court was thus entitled to rely on state law in ruling on the validity of the 2007 Mortgage and did not err as a matter of law by finding it "inoperative."

GMAC's alternative argument is that under *Mercier v. Partlow*, 546 A.2d 787 (Vt. 1988), "Debtors have no equity to support their Homestead exemption claim." (Case No. 13-82, Doc. 28 at 16.) In *Mercier*, the Vermont Supreme Court observed that the "remedial purpose" of the homestead exemption was "to protect homeownership from

17

loss to creditors" and therefore held "that the homestead attaches to [the homeowner's]
equity and not to the full fair market value." *Mercier*, 546 A.2d at 524-25. Because
GMAC failed to raise its *Mercier* argument before the Bankruptcy Court on remand and
raises it for the first time in these subsequent appeals, the court does not address it
further. *See Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 607 (2d Cir. 2007)
(declining to consider issue not raised before bankruptcy court or district court, and
noting that the "failure to raise the issue in the bankruptcy court deprived that court of the
opportunity to fashion relief"); *see also In re Lehman Bros. Holdings Inc.*, 513 F. App'x
75, 77 (2d Cir. 2013) (declining to consider issues not raised before bankruptcy court and
district court).

### E.     The Bankruptcy Court's Consideration of the Competing Equities.

GMAC contends that, on remand, the Bankruptcy Court violated this court's
mandate by failing to consider the competing equities in adjudicating the validity of the
2007 Mortgage "consistent with [its] statutory and constitutional authority." *GMAC
Mortg., LLC v. Orcutt*, 2012 WL 6552914, at *12 (D. Vt. Dec. 13, 2012). On remand,
the Bankruptcy Court determined that it could not apply 11 U.S.C. § 105 to weigh the
competing equities in this case or to determine whether the 2007 Mortgage was valid
under state law, reasoning:

> The use of § 105(a) is particularly suspect here because the language of 27
> V.S.A. § 141 categorically renders the [2007 Mortgage] inoperative under
> the undisputed facts in the record. There are no ambiguities in either the
> facts or the law that would open the door for this Court to render a decision
> based upon § 105(a), in reliance upon equitable principles, rather than
> based upon a straightforward application of the state statute. Because 27
> V.S.A. § 141 classifies the [2007 Mortgage] as inoperative, [Debtors']
> treatment of the [2007 Mortgage] as an unsecured claim under § 506(a) is
> proper, [GMAC's] objection to confirmation of [Debtors' Plan] under
> § 1325(a)(3) must be overruled, and [GMAC's] objection to [Debtors']
> claim of homestead exemption under § 522(b)(1) and 27 V.S.A. § 101 must
> likewise be overruled. The Court will not enter an order reaching contrary
> conclusions, under § 105(a), based upon a general sense of fairness. To do
> so would be to give [GMAC] a substantive right not available under
> applicable law.

*In re Orcutt*, 2013 WL 1342741, at *6 (Bankr. D. Vt. Apr. 2, 2013). The Bankruptcy Court perceived that using § 105(a) to hold the 2007 Mortgage valid would be contrary to the Second Circuit's guidance that "[t]he equitable power conferred on the bankruptcy court by section 105(a) is the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing." *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003).

It is not clear whether any party requested the Bankruptcy Court to rely on § 105 in weighing the competing equities. Certainly this court did not direct the Bankruptcy Court to do so. *See In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d at 92 (holding 11 U.S.C. § 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity") (internal quotation marks omitted); *see also Rendina v. Northrop*, 399 B.R. 376, 380-81 (D. Vt. 2008) (noting "§ 105(a) cannot operate on a stand-alone basis [and] must be invoked in conjunction with another Bankruptcy Code section" and concluding Bankruptcy Court erred by invoking § 105(a) "to grant [creditor] an exception from discharge"). Instead, because the Bankruptcy Court invoked the claims allowance process under 11 U.S.C. § 506(a) as a basis for its statutory and constitutional authority to adjudicate the 2007 Mortgage's validity, its conclusion that a Vermont statute is "controlling" and "categorically" applies to render the 2007 Mortgage "inoperative" in the claims allowance process constitutes a clear error of law.

It is well-established that, "for many purposes, courts of bankruptcy are essentially courts of equity," *Pepper v. Litton*, 308 U.S. 295, 304 (1939) (internal quotation marks omitted), and the claims allowance process, which resolves debtor-creditor relations, is specifically equitable in nature. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58 (1989) (explaining that, when an issue "'arises as part of the process of allowance and disallowance of claims, it is triable in equity'") (quoting *Katchen v. Landy*, 382 U.S. 323, 336 (1966)); *see also In re Refco Inc.*, 505 F.3d 109, 118 (2d Cir. 2007) ("Bankruptcy courts are primarily courts of equity, but they are not empowered to address *any* equitable

claim tangentially related to the bankruptcy proceeding. Bankruptcy court is a forum where creditors and debtors can settle their disputes *with each other*."). Accordingly, "[e]ven though a claim may be valid and enforceable under state law, the bankruptcy court has sole jurisdiction and discretion to allow or disallow the claim under federal law." *In re Murgillo*, 176 B.R. 524, 531 (B.A.P. 9th Cir. 1995) (citing *Pepper*, 308 U.S. at 304). As the Second Circuit has explained:

> "It has long been a basic function of the bankruptcy court, both by reason of its equitable powers and the bankruptcy statute, to pass upon the validity of creditors' claims." *In re Farrell*, 27 B.R. 241, 245 (Bankr. E.D.N.Y. 1982). The bankruptcy court "in passing on allowance of claims sits as a court of equity. . . . In the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." *Pepper*, 308 U.S. at 307-08. This sifting includes "full power to inquire into the validity of any claim asserted against the estate and to disallow it if it is ascertained to be without lawful existence. *And the mere fact that a claim has been reduced to judgment does not prevent such an inquiry*." *Pepper*, 308 U.S. at 305 (citations omitted) (emphasis supplied). These broad powers have been "invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done." *Pepper*, 308 U.S. at 305[.]

*Kelleran v. Andrijevic*, 825 F.2d 692, 697-98 (2d Cir. 1987) (alterations in original).

Here, the Bankruptcy Court concluded that "adjudicating the validity" of the 2007 Mortgage was "necessary" to ruling on the validity of GMAC's claim of secured status and as "part and parcel" of the claims allowance process, *In re Orcutt*, 2013 WL 1342741, at *4, *7 (Bankr. D. Vt. Apr. 2, 2013); however, the Bankruptcy Court then failed "in passing on allowance of claims [to] sit[] as a court of equity." *Pepper*, 308 U.S. at 307. While the Bankruptcy Court explained it "might determine that since [Debtors] have gotten the benefit of [GMAC's] loan, they should not be entitled to absolve themselves of liability on [GMAC's] mortgage," the Bankruptcy Court "appl[ied] the pertinent statutes and controlling case law," *In re Orcutt*, 2013 WL 1342741, at *5 (Bankr. D. Vt. Apr. 2, 2013), rather than approaching the issue as a court

of equity "to sift the circumstances surrounding" Debtors' exemption and GMAC's proof of claim as a secured creditor. *Pepper*, 308 U.S. at 308; *see also Musso v. Ostashko*, 468 F.3d 99, 109 (2d Cir. 2006) ("By exercising its equitable powers, the bankruptcy court may thus sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankruptcy estate.") (internal quotation marks omitted). For this reason, the Bankruptcy Court improperly limited its consideration to solely the adjudication of the validity of the 2007 Mortgage under state law.

### F. The Bankruptcy Court's Rejection of GMAC's State Law Defense of Equitable Subrogation.

As a final matter, GMAC argues that, on remand, the Bankruptcy Court erred in failing to consider GMAC's defense of equitable subrogation. As GMAC points out, if the Bankruptcy Court had the authority to determine the validity of the 2007 Mortgage under state law, then it likewise had the authority to consider GMAC's state law defense of equitable subrogation. The Bankruptcy Court's failure to consider equitable subrogation resulted in what GMAC aptly characterizes as an "asymmetrical approach." (Case No. 13-83, Doc. 14 at 35-36 & Doc. 17 at 26-27.)

The Bankruptcy Court did not address GMAC's equitable subrogation defense in the April 2, 2013 Adversary Proceeding Order based on its conclusion that it could not weigh the competing equities because "[t]o do so would be to give [GMAC] a substantive right not available under applicable law." *In re Orcutt*, 2013 WL 1342741, at *6 (Bankr. D. Vt. Apr. 2, 2013). This conclusion was, itself, in error because courts have allowed equitable subrogation defenses in circumstances similar to this case, and there is no reason to predict that the Vermont Supreme Court would bar that defense to a creditor who has advanced money in good faith which a debtor has not been repaid. The Bankruptcy Court's determination that Vermont's statutory law trumps any consideration of equitable subrogation was thus in error. The New Hampshire Supreme Court's decision in *Chase v. Ameriquest Mortg. Co.*, 921 A.2d 369 (N.H. 2007), is directly on point.

In *Chase*, the court addressed a plaintiff's efforts to stave off foreclosure of her homestead by a mortgage company that had extended a loan to the plaintiff and her husband based upon the husband's forgery of the plaintiff's signature on the loan documents. Although the court concluded that the mortgage was not a valid conveyance of a homestead pursuant to a New Hampshire statute similar to 27 V.S.A. § 141, *see Chase*, 921 A.2d at 373, the court applied equitable subrogation on the grounds that it "discern[ed] nothing unjust about allowing [the subsequent lender] to obtain relief for . . . the amount for which the plaintiff would have been liable under the [first] mortgage. To hold otherwise would potentially yield a windfall for the plaintiff and could encourage collusive deception against lenders." *Id.* at 377.

The Vermont Supreme Court has similarly recognized the doctrine of equitable subrogation as "an equitable doctrine that enables a secondarily liable party who has been compelled to pay a debt to be made whole by collecting that debt from the primarily liable party, who, in good conscience, should be required to pay." *Nationwide Mut. Fire Ins. Co. v. Gamelin*, 786 A.2d 1078, 1084 (Vt. 2001) (citing *Norfolk & Dedham Fire Ins. Co. v. Aetna Cas. & Sur. Co.*, 318 A.2d 659, 661 (Vt. 1974) ("Subrogation is an equity creature akin to and derived from the law of unjust enrichment and restitution.")). The doctrine "permits an insurer to be subrogated to the claims of its insured, even if the policy lacks an express provision reserving such a right," when necessary to fulfill the doctrine's "purely equitable" purpose. *Ulm v. Ford Motor Co.*, 750 A.2d 981, 992 (Vt. 2000) (internal quotation marks omitted); *see also Norfolk & Dedham Fire Ins. Co.*, 318 A.2d at 661 ("It is a doctrine which has particular approval in Vermont as between insurer and insured.").

While it appears that the Vermont Supreme Court has never addressed the use of the doctrine of equitable subrogation in the context of a mortgage, its jurisprudence, as well as cases from other states, support a conclusion that equitable subrogation may be available to GMAC. *See* Restatement (Third) of Property (Mortgages) § 7.6(a) (1997) ("One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to

22

prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee."); *Bank of Am., N.A. v. Prestance Corp.*, 160 P.3d 17, 18 (Wash. 2007) (adopting Restatement § 7.6 on subrogation and holding that "a lender can be equitably subrogated to a first-priority lien despite having actual or constructive knowledge of junior lienholders"); *see also United Carolina Bank v. Beesley*, 663 A.2d 574, 576 (Me. 1995) ("When a lender advances to a co-tenant money with which to discharge a mortgage on the common property, it is proper to apply the doctrine [of equitable subrogation] and to subrogate the lender to the discharged mortgage, even as against co-tenants who were unaware of and did not authorize the transaction."); *Rock River Lumber Corp. v. Universal Mortg. Corp. of Wis.*, 262 N.W.2d 114, 117 (Wis. 1978) ("Under what is generally termed conventional subrogation, a lender will be granted subrogation where money is advanced in reliance upon a justifiable expectation that the lender will have security equivalent to that which his advances have discharged, provided that no innocent third parties will suffer. Equity will treat such a transaction as tantamount to an assignment of the original security.") (internal quotation marks and citations omitted).

"Subrogation arises when one man is compelled to pay a debt for which another is primarily liable and which, in good conscience, should have been discharged by the latter." *Norfolk & Dedham Fire Ins. Co.*, 318 A.2d at 661; *see also Wasko v. Manella*, 849 A.2d 777, 781 (Conn. 2004) ("[T]he doctrine of . . . equitable subrogation is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.") (internal quotation marks omitted). A party "making a 'voluntary' payment" is not entitled to equitable subrogation, and a party "is a volunteer if he pays while under no obligation to pay or when no interest of his is protected by payment." *Norfolk & Dedham Fire Ins. Co.*, 318 A.2d at 661.

23

The Bankruptcy Court has concluded that a lender who refinances a loan is a volunteer for purposes of equitable subrogation when it relies on its own mortgage as security for repayment. *See In re Orcutt*, 2012 WL 627675, at *6 (Bankr. D. Vt. Feb. 24, 2012) ("Equitable subrogation relief is not available when, as here, a creditor voluntarily pays off a debt in connection with a refinancing in reliance upon its own new mortgage deed."); *see also In re Bosley*, 446 B.R. 79, 84 (Bankr. D. Vt. 2011) ("The Defendant argues that the balance of equity favors the application of equitable subrogation in the instant proceeding, to allow it to 'stand in the shoes' of [the first lender], CitiFinancial because the [Defendant's] loan was advanced for the explicit purpose of satisfying the CitiFinancial loan. Therefore, it perceives itself to have stepped in for CitiFinancial, assuming the benefit of CitiFinancial's secured position. However, this argument fails to take into account the crucial fact that [the Defendant] made the $112,000 loan voluntarily in reliance upon its own mortgage deed.").

The Vermont Supreme Court, however, has defined a "volunteer" differently and concludes that it applies only to a person who pays "when no interest of his is protected by payment." *Norfolk & Dedham Fire Ins. Co.*, 318 A.2d at 661. Other courts have taken a similar approach. *See, e.g., Chase*, 921 A.2d at 376-77 ("For purposes of equitable subrogation, 'one is a volunteer if he pays while under no obligation to pay or when no interest of his is protected by payment.'") (quoting *Norfolk & Dedham Fire Ins. Co.*, 318 A.2d at 661); *E. Boston Sav. Bank v. Ogan*, 701 N.E.2d 331, 334 n.4 (Mass. 1998) (defining "volunteers" as persons who "in making a payment, they have no interest of their own to protect, they act without any obligation, legal or moral, and they act without being requested to do so by the person liable on the original obligation") (internal quotation marks omitted); *see also* Restatement (Third) of Property (Mortgages) § 7.6(b)(1) ("[S]ubrogation is appropriate to prevent unjust enrichment if the person seeking subrogation performs the obligation . . . in order to protect his or her interest[.]").

Under Vermont law, GMAC is not a "volunteer" who is precluded from raising an equitable subrogation defense.[7]  When GMAC refinanced the 2007 Loan, GMAC sought to protect its own existing interests under the 2004 Notes and Mortgages by combining those debts into a single refinanced debt represented by the 2007 Note.  GMAC intended to protect its interest in the Tunbridge Property by obtaining the 2007 Mortgage on the Tunbridge Property to secure repayment of the debt under the 2007 Note.  This payment protected GMAC's "interest in the homestead as collateral to secure the debt" and is sufficient to establish that the transaction was not voluntary.  *See Chase*, 921 A.2d at 377 (determining that Ameriquest (second lender) was not a voluntary payer when it paid off a mortgage held by Bankers Trust (first lender) "in order to protect its interest in the homestead as collateral to secure the debt"); *Rock River Lumber Corp.*, 262 N.W.2d at 115, 117-20 (concluding second lender who "advanced money to discharge the existing mortgage of" the first lender became "subrogated to the rights of the [first lender] and, therefore, to priority as against construction lien claimants who would otherwise have been entitled to priority as against the [second lender's] mortgage"); *see also Mort v. United States*, 86 F.3d 890, 894 (9th Cir. 1996) ("A person who lends money to pay off an encumbrance on property and secures the loan with a deed of trust on that property is not a volunteer for purposes of equitable subrogation."); *Katsivalis v. Serrano*

---

[7] In addition, GMAC was not an "intermeddler" in the 2007 transaction who interfered with Debtors' "business relationship" with a separate creditor because GMAC was a prior lender to Debtors. *See Norton v. Haggett*, 85 A.2d 571, 573-74 (Vt. 1952) (explaining that plaintiff "interfered in the business relationship between the bank and the [defendants] as a total stranger thereto, without any occasion, reason or inducement on the part of the [defendants]").  The Vermont Supreme Court has held that "[n]o protection is deserved by one who intermeddles," *id.* at 574, and that an intermeddler cannot seek equitable subrogation for a payment that was "officious" because "[e]quity should not . . . encourage a person to intrude upon the affairs of another." *Norfolk & Dedham Fire Ins. Co.*, 318 A.2d at 661-62; *see Blackford v. Dickey*, 789 S.W.2d 445, 447 (Ark. 1990) (explaining that "[s]ubrogation will not generally be decreed in favor of a mere volunteer or intermeddler who, without any duty, pays the debt or discharges the obligation of another" and denying equitable subrogation because parents who paid off daughter's mortgages were "volunteers" who had no "legal obligation" to pay the mortgages and were not attempting to "protect [their] own secondary right"); *see also Mort v. United States*, 86 F.3d 890, 894 (9th Cir. 1996) ("A volunteer, stranger, or intermeddler is one who thrusts himself into a situation on his own initiative[.]").

*Reconveyance Co.*, 138 Cal. Rptr. 620, 625-28 (Cal. Ct. App. 1977) (concluding lender who granted new mortgage was not a volunteer and was entitled to equitable subrogation, despite that new mortgage's invalidity under California law).

In order for equitable subrogation to apply, the party paying the debt must not have been primarily liable for the debt paid, and the party must have paid the entire debt. *See Chase*, 921 A.2d at 376 ("In order for equitable subrogation to apply, we hold that all of the following conditions must be met: (1) the subrogee cannot have acted as a volunteer; (2) the subrogee must have paid a debt upon which it was not primarily liable; (3) the subrogee must have paid the entire debt; and (4) subrogation may not work any injustice to the rights of others."); *E. Boston Sav. Bank*, 701 N.E.2d at 334 (applying equitable subrogation when "(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder") (internal quotation marks and footnote omitted). Here, Debtors, not GMAC, were liable for the previous debts (the First and Second 2004 Notes), and GMAC's 2007 refinancing paid off the entirety of the First and Second 2004 Notes. The first three prongs of equitable subrogation are thus satisfied. The remaining element of equitable subrogation is whether its application would "work any injustice to the rights of others." *Chase*, 921 A.2d at 376.

On remand, the Bankruptcy Court noted that, if it did consider the equities, "it would need to take into account the fact that the unenforceability of [the 2007 Mortgage] is not the result of any act of [Debtors], but rather due exclusively to [GMAC's] failure to include Mr. Orcutt as a signatory on the mortgage deed. This factor would offset any arguments of unjust enrichment or windfall to [Debtors]." *In re Orcutt*, 2013 WL 1342741, at *7 (Bankr. D. Vt. Apr. 2, 2013). GMAC's apparent mistake in accepting the 2007 Note without Mr. Orcutt's signature, however, does not render equitable subrogation unavailable. Instead, it is precisely for such circumstances that the doctrine was created.

"[S]ubrogation is appropriate to prevent unjust enrichment if the person seeking subrogation performs the obligation . . . on account of misrepresentation, mistake, duress, undue influence, deceit, or other similar imposition." Restatement (Third) of Property (Mortgages) § 7.6(b)(3). "It is the general rule that, where a mortgage has been discharged by mistake, equity will set the discharge aside and reinstate the mortgage to the position the parties intended it to occupy, where the rights of intervening lienors have not been affected." *E. Boston Sav. Bank*, 701 N.E.2d at 333 (internal quotation marks omitted); *see also Chase*, 921 A.2d at 377 (concluding that, although the mortgage company was negligent in failing to uncover a forgery, "negligence on the part of a surety does not invalidate the right to subrogate"); *Homeside Lending, Inc. v. Miller*, 2001 UT App 247, ¶¶ 22-23, 31 P.3d 607, 612 (explaining that equitable subrogation applies when "some principle in equity, such as fraud, mistake, and the like, demands" its application and concluding "no mistake of fact or fraud occurred, and therefore, it would be inappropriate to apply equitable principles to modify or rearrange lien priorities") (internal quotation marks and citation omitted); *Katsivalis*, 138 Cal. Rptr. at 625 ("[E]quitable jurisdiction runs to mistake as well as fraud.").

Correspondingly, the Bankruptcy Court's assumption that GMAC's unilateral mistake would offset any unjust enrichment fails to take into consideration what *both* Debtors would retain at GMAC's expense. In this case, in the absence of equitable subrogation, not only would Mr. Orcutt retain the benefit of a substantial discharge of indebtedness for which he gave no consideration, Ms. Stevens would share in that discharge of indebtedness, retain the cash proceeds and the credit card pay-offs of the 2007 refinance, and escape the debt which she voluntarily assumed with her husband's knowledge and tacit consent. *See Shchekina v. Wash. Mut. Bank*, 2012 WL 3245957, at *4-6 (N.D. Ill. Aug. 7, 2012) (concluding equitable subrogation would apply under Illinois law because, although individual's signature was forged on the later mortgages, "she received a benefit in each instance, in that any liability she might have had with regard to the previous mortgage was extinguished by the later mortgagee" and that if she were "found to hold the property free and clear . . . , she would be getting the benefit of

being off the hook on the prior debts and mortgages without having given anything in return" and the final lender "would be left holding the bag"); *see also Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein*, 619 So. 2d 267, 270-71 (Fla. 1993) (permitting an equitable lien against homestead property in favor of a lender, when the debtor husband fraudulently obtained a loan and used the loan to satisfy three preexisting mortgages on the homestead property, because equitable liens are permitted on homestead when "equity demands it" and wife was "not entitled to a . . . windfall" of the entire amount loaned to husband despite the fact that he forged her signature to obtain the loan).  In the context of a bankruptcy proceeding in which a debtor stands to receive a discharge of numerous unpaid debts including the "inoperative" debt in question, the Bankruptcy Court's conclusion that, under equitable subrogation, GMAC's mistake would automatically offset Debtors' windfall is too simplistic. *See Williams v. Aloisi*, 271 B.R. 676, 684-85 & n.10 (M.D. Fla. 2002) (reversing and remanding denial of equitable relief and instructing bankruptcy court to consider whether spouse who did not engage in fraudulent conduct should be able to claim homestead exemption if the spouse "knowingly benefitted" from funds obtained by fraud, including whether spouse used those funds to purchase or improve the homestead).

Moreover, the competing equities do not concern only GMAC and Debtors. Although the Trustee has remained silent on the issue, the interests of Debtors' unsecured creditors must also be considered, and "[s]ubrogation will not be enforced to the prejudice of equal or higher rights." *Norfolk & Dedham Fire Ins. Co.*, 318 A.2d at 662 (observing that the "competing equities must be considered in any subrogation . . . situation"); *see also In re Couillard*, 486 B.R. 466, 478 (Bankr. W.D. Wis. 2012) ("Equitable subrogation . . . is not simply based on whether a lender paid another's debt. It contemplates a balancing of the equities between competing claimants."). As this court pointed out in *Tenn. Commerce Bank v. Hutchins*, 409 B.R. 680, 685 (D. Vt. 2009), application of the doctrine of equitable subrogation may work "to the detriment of the other unsecured creditors."  The Bankruptcy Court should thus consider whether the

unsecured creditors, rather than Debtors, should reap the benefit of GMAC's mistake and whether the application of equitable subrogation would interfere with their rights.

In summary, the Bankruptcy Court erred as a matter of law in determining that Vermont statutory law "categorically" foreclosed its consideration of competing equities and GMAC's defense of equitable subrogation. It also inaccurately characterized GMAC as a "volunteer" in discharging the 2004 Notes and Mortgages and erroneously ruled that equitable subrogation "is not available when . . . a creditor voluntarily pays off a debt in connection with a refinancing in reliance upon its own new mortgage deed." *In re Orcutt*, 2012 WL 627675, at \*6 (Bankr. D. Vt. Feb. 24, 2012). Finally, although the Bankruptcy Court merely speculated regarding how it would decide the issue of equitable subrogation, its hypothetical approach that a unilateral mistake offsets any windfall fails to reflect the nature and purpose of the doctrine of equitable subrogation and a weighing of the competing equities. The Bankruptcy Court's decision on the issue of the validity of the 2007 Mortgage in the claims allowance process and the applicability of the doctrine of equitable subrogation are therefore REVERSED.

## CONCLUSION

For the reasons stated above, the court AFFIRMS IN PART and REVERSES IN PART the Bankruptcy Court's April 2, 2013 Plan and Homestead Exemption Order that overruled GMAC's objection to Debtors' claimed homestead exemption and AFFIRMS IN PART and REVERSES IN PART the Bankruptcy Court's April 2, 2013 Adversary Proceeding Order granting Debtors' motion for summary judgment, denying GMAC's cross-motion for summary judgment, and ruling that the 2007 Mortgage is inoperative under Vermont law. The court REMANDS both the Main Proceeding and Adversary Proceeding to the Bankruptcy Court to reconsider the validity of the 2007 Mortgage in the claims allowance process.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 28th day of February, 2014.

Christina Reiss, Chief Judge
United States District Court